# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| In the Matter of the Search of | ) | |
|---|---|---|
| Black safe or lock box bearing manufacturer's name "BULLDOG VAULTS," with a four-button coded entry and circular key access option, currently located at the Homeland Security Investigations office in Reno, NV | ) ) ) ) ) ) | Case No.  2:24-sw-0420 JDP |

**FILED**
Apr 25, 2024
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

located in the _____ District of _____ Nevada _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) & (g)(5) | Prohibited Person in Possession of a firearm and/or ammunition |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Ryan M. MacLean
*Applicant's signature*

SA Ryan M. MacLean, HSI
*Printed name and title*

Sworn to telephonically.

Date: April 25, 2024

*Judge's signature*

City and state:  Sacramento, California          Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF

## AN APPLICATION FOR A SEARCH WARRANT

I, Ryan MacLean, Special Agent with Homeland Security Investigation (HSI), being duly sworn under penalty of perjury, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the Department of Homeland Security, Homeland Security Investigations (HSI), within the meaning of Section 878(a) of Title 21, United States Code; that is, an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations. I am currently assigned to the HSI Reno, NV office, under the Special Agent in Charge, Las Vegas, NV.

3. I received specialized law enforcement training at the Federal Law Enforcement Training Center (FLETC) from December 2008 to July 2009. The training curriculum covered all aspects of drug investigations, including the identification of controlled substances, how to conduct physical and electronic surveillance, the use of confidential sources, interview techniques, undercover operations, how to conduct financial investigations, and the general operation of drug trafficking organizations.

4. While working as a Special Agent, I have been involved in the investigations of various individuals and organizations involved in the manufacture, distribution, and use of controlled substances. I have been trained in the preparation of affidavits, including affidavits in support of search and GPS location warrants, and have participated in the execution of search and arrest

warrants for violations of federal and state drug laws.  I have conducted surveillance operations and have become familiar with the methods used by individuals engaged in the manufacture, trafficking, possession, and use of controlled substances.  I have directed the actions of confidential sources during drug investigations, and I have acted in an undercover capacity in drug operations.  I have also spoken with other investigators, informants, suspects, and other experienced drug traffickers regarding the methods and practices of drug traffickers and drug trafficking organizations.  I have monitored informants' conversations with drug traffickers and have also made myself familiar with drug-related conversations. I have assisted other law enforcement officers with wiretap investigations, reviewed monitored wiretap conversations, and taken law enforcement action based on intercepted communications. In light of the foregoing, I am familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed; the methods of payment for such drugs; the methods of laundering and concealing of drug proceeds; and the methods of communication between drug traffickers.

5.  Based upon my training and experience, and the training and experience of other investigators who have also participated in drug trafficking investigations with whom I have spoken, I know that it is common for persons involved in organized drug trafficking activities to:

> a. use various locations to serve different functions so that customers, thieves, and law enforcement personnel do not learn about any one location where large quantities of narcotics, money, and/or other drug-related assets are stored. Therefore, one or more locations are often used to store lesser amounts of narcotics, money, and/or drug related assets, and additional locations are used to meet customers;

b. conceal, in various locations, including their residences, caches of drugs, drug paraphernalia, jewelry, automobiles, automobile titles, deeds to property, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money acquired from engaging in narcotics trafficking activities;

c. maintain, at their locations, including the residences where they live, and in their vehicles, money, ledgers, narcotic supplier lists, correspondence, notations, logs, receipts, journals, books, records and other materials noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed; that drug traffickers also maintain drug paraphernalia such as cutting materials, weighing devices, miscellaneous containers, and measuring devices which are used to facilitate the distribution of narcotics;

d. take or cause to be taken photographs of themselves, their associates, their property and their product; and that these traffickers usually maintain these photographs at their residences and/or on their cellular devices or computers;

e. have in their possessions, that is on their persons, in their vehicles, at their residence and/or at their stash houses, firearms, including handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons, that are used to protect and secure the drug trafficker's property, including narcotics, narcotic paraphernalia, currency, jewelry, and records;

f. keep records of their illegal activities for a period of time extending beyond the time during which they actually possess illegal controlled substances, in order that they can maintain contact with their criminal associates for future drug

transactions, and so that they can have records of prior transaction for which, for example, a trafficker might still be owed money, or might owe someone else money; and that said records are typically stored in places that are readily accessible to them, such as their residences or vehicles.

6. I am further aware that drug trafficking activity can occur in areas public or private and at any time, day or night. I am aware of illicit drug seizures occurring late in the night and in the early morning hours in northern California by law enforcement officers, and that the storage of controlled substances intended for distribution typically occur in private areas, such as private residences, vehicles, or designated storage locations.

7. My training and experience also form the basis for the opinions expressed below. The facts which establish the probable cause necessary for the issuance of this Order are personally known to me, contained in official government or business records which I have reviewed, or have been told to me directly by other members of the investigative team (which includes federal and local law enforcement officers). Since the Affidavit is being submitted for the limited purpose of securing search authorization, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause in support of the issuance of a warrant to search the below item.

8. Based upon the facts set forth below, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) & (g)(5) – Unlawful Possession of a Firearm by a Prohibited Person (hereinafter "Target Offenses") have been committed, are being committed, and will be committed by Arturo GONZALEZ.

## ITEM TO BE SEARCHED

9. This Affidavit is submitted in support of a Search Warrant to search the following item:

**A black safe or lock box bearing manufacturer's name "BULLDOG VAULTS", with a four-button coded entry and circular key access option, currently located at the Homeland Security Investigations offices located in Reno, NV (the TARGET CONTAINER).**

## PROBABLE CAUSE STATEMENT

10. In April of 2013, Arturo GONZALEZ (DOB: 06/09/1984) was arrested on state felony charges filed by the Superior Court of California, County of Merced, for crimes including Burglary in the First Degree; Possession of a Firearm by a Person under 30; Possession of Ammunition by a Prohibited Person; and Making Criminal Threats.  Following his arrest by state and local law enforcement, GONZALEZ was interviewed by U.S. Immigration officials and found to be in violation of Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, as GONZALEZ was found to be within the United States unlawfully and had been convicted of crimes which constitute the essential elements of a crime involving moral turpitude.  This violation of the INA stemmed from a 2012 conviction, also in Merced County, for felony charges of Battery, Participating in Street Gang Activity and Carrying a Loaded Firearm.

11. GONZALEZ was convicted of the crimes in August of 2013 and sentenced to 8 years in prison.  Upon his release from state prison in 2016, GONZALEZ was removed from the United States on or about October 11, 2016.

12. On September 9, 2023, Truckee Police officers were dispatched to the Casa Baeza Restaurant, located at 10010 Bridge Street, Truckee, CA, in response to a 911 call in which the caller stated that there was a male subject in the restaurant who was drinking and had brandished a firearm.  Upon arrival on scene, Officers contacted the reporting party (hereafter referred to as

JA) who stated that the suspect was no longer present, but the subject's car, in which he drove to the restaurant that day, a Jeep Grand Cherokee, bearing CA Plate # 8XZJ476, was still there and unoccupied. Officers approached and cleared the vehicle; they discovered the vehicle was idling and unlocked.

13. Shortly thereafter, Officers interviewed JA who stated that he and two women were sitting in the rear of the restaurant, discussing a work-related topic. During their conversation, the door separating the bar and the rear area was opened by the suspect. The suspect allegedly began cursing and threatening to fight him. Then JA stated that the suspect appeared intoxicated, and he was ultimately removed from the rear area by two associates of the suspect.

14. JA later exited the business through a rear door and was reengaged by the suspect, who had exited via the front door of the establishment. Upon encountering JA, the suspect brandished a semi-automatic pistol and pointed it directly at him. The suspects' associates again intervened and placed him in the aforementioned Jeep Grand Cherokee. JA provided the following description of the suspect: Male Hispanic, light complexion, 30 years of age with a mustache, with a Playboy Bunny logo tattoo on the left side of his neck, wearing a black jacket, black jeans, and gold rimmed glasses.

15. A probable cause search of the vehicle was conducted in which the Officers discovered a paystub from Safeway, addressed to one Arturo GONZALEZ II.

16. Following the incident, law enforcement researched local databases in an attempt to further identify GONZALEZ II. Officers discovered an incident on April 9, 2023 (Report #2304090030), in which three individuals were named, to include one Arturo GONZALEZ Contreras. A review of body worn camera footage from the incident showed an individual, self-identified as "Arturo," wearing round, gold framed eyeglasses, with a Playboy Bunny logo tattoo

on the left side of his neck.  During the contact, "Arturo" advised officers that he was an employee of the Safeway grocery store in Truckee, CA, and that he was residing at the apartments located at 10497 Jibboom Street, Truckee, CA, Apartment #A107.

17. On September 13, 2023, Surveillance footage provided by the restaurant was reviewed by law enforcement.  The footage captured matched what was described by the reporting party previously.

18. On September 26, 2023, Homeland Security Investigations (HSI) Special Agent (SA) Ryan Maclean received a request from Truckee Police in identifying the suspect. SA Maclean positively identified the suspect as one Arturo GONZALEZ (DOB: 06/09/1994; FBI# 333192LD1; A# 205764603).  GONZALEZ faced a final order of deportation in response to criminal drug convictions which meet the guidelines for criminal prosecution for crimes of moral turpitude. In a documented interview conducted by Immigration officials in 2013, GONZALEZ self-identified as an active member of the Sureño street gang.

19. On September 26, 2023, SA Maclean conducted surveillance of the apartments located at 10497 Jibboom Street, Truckee, CA.  Investigators observed GONZALEZ depart apartment B107, through the sliding patio doors, walk to building C and enter apartment C208.  GONZALEZ was wearing blue jeans and what appeared to be the same black jacket he had been wearing on September 9, 2023.

20. On September 27, 2023, at 7:20 a.m., SA Maclean observed GONZALEZ as he departed the parking lot of the apartment complex.  GONZALEZ was observed in a black jacket once again and was wearing what appeared to be the same gold rimmed glasses.  Surveillance units observed the vehicle travel to the Safeway grocery store, located at 11290 Donner Pass Road, Truckee, CA.

21. From September 27, 2023, to April 24, 2024, GONZALEZ was observed in no less than four different vehicles, to include the vehicle originally listed in the Truckee Police report. None of the vehicles were registered under his name, and he was observed travelling to multiple locations at various times of the day and night.

22. On November 2, 2023, Truckee Police obtained an arrest warrant out of Nevada County, CA for GONZALEZ in response to his assault allegations on September 9, 2023.

23. On March 21, 2024, GONZALEZ was indicted for a violation of 8 USC 1326(a) and (b)(1) – Deported Alien Found in the United States and a federal arrest warrant was issued.

24. On April 24, 2024, at approximately 7:20 a.m., investigators observed GONZALEZ departing his apartment and entering a white Kia Forte, bearing CA Plate# 9JCY883, that was parked in the parking lot just to the north of the identified apartment for GONZALEZ. Before Gonzalez drove away, law enforcement executed an arrest, by instructing him to exit the car and approach the rear of the vehicle where he was then placed in restraints. GONZALEZ had a black Coach satchel on his person at the time of his arrest. The satchel was searched incident to arrest and SA Maclean found GONZALEZ's Mexican voter registration card and his Mexican driver's license.

25. During the search of the satchel, SA Maclean found set of keys on a key chain in the shape of a California bear, one key depicted the Los Angeles Lakers logo, and the second key was a tubular key, often utilized to secure lock boxes or safes.

26. HSI Special Agent MacLean and HSI Taskforce Officer Mackenzie Miller, read GONZALEZ his Miranda rights. GONZALEZ agreed to be interviewed without an attorney present. GONZAELZ confirmed his identity, stated that he had been living in Truckee, CA for approximately one year. SA MacLean proceeded to show GONZALEZ a still photograph taken

from the surveillance footage which depicted him brandishing a firearm and being held back by another Hispanic male from September 9, 2023. GONZALEZ admitted the picture was of him. GONZALEZ denied ownership of the firearm and stated that it was no longer in his possession. When asked if he could provide investigators with the location of the firearm, GONZALEZ stated that he could not. The interview was concluded shortly thereafter, and he was ultimately transported to Sacramento, CA without incident.

27. Investigators knocked on GONZALEZ's apartment, identified as Apartment #B107. The door was answered by an older Hispanic female, later identified as Laura Ramirez Barajas, and two Hispanic males, later identified as Yuriel Valdez Armenta, and Jose Ramirez. Ramirez Barajas consented for law enforcement to enter the apartment to talk about why GONZALEZ was arrested. HSI Resident Agent in Charge Jonathan Creiglow introduced himself in the Spanish language to Ramirez Barajas and asked if she was the owner, or primary tenant. Ramirez Barajas stated she was the person in charge of the apartment. Ramirez Barajas confirmed she was allowing GONZALEZ to live in her apartment along with her son, Jose Ramirez, and four other male individuals.

28. Ramirez Barajas stated GONZALEZ occupied an area with a bed in the living room. SA Creiglow asked Ramirez Barajas and two males if they knew of any firearms or contraband in the residence. Ramirez Barajas stated she was not aware of any and consented in writing for investigators to search the apartment for a firearm. Investigators performed a cursory search of the living room and kitchen area in an attempt to locate firearm, however the firearm was not located.

29. While on scene, investigators, posted on the exterior of the residence, were contacted by a building manager who stated that the individuals associated with that apartment were involved

in narcotics trafficking, specifically cocaine sales, and that management was in the process of attempting to evict the suspected parties. The building manager stated two Hispanic males driving a black Durango and brown Cadilac Escalade were dealing cocaine out of the apartment. Investigators had previously observed GONZALEZ operating the black Durango despite the fact that the vehicle is registered to Jesus LIZZARAGA, and investigators have repeatedly observed the Escalade being driven by Jesus LIZZARAGA Magana (LIZZARAGA).

30. SA Maclean and RAC Creiglow returned to the apartment to speak with the tenants. RAC Creiglow asked Jose Ramirez and Armenta if investigators could search their bedrooms. Armenta and Ramirez gave written consent to search their bedrooms. Valdez Armenta stated he occupied a bedroom with LIZZARAGA and provided consent for investigators to search his room. Investigators searched the room and in plain view noticed a black bowl with a small measuring spoon inside coated with a white powdery substance that resembled cocaine. Investigators also located a black backpack under the bed with a small handgun safe (the TARGET CONTAINER) and a military style pouch containing handgun ammunition. The TARGET CONTAINER is a black safe or lock box and bears the manufacturer's name "BULLDOG VAULTS," with a four-button coded entry and circular key access option. Valdez Armenta told RAC Creiglow the backpack belonged to either GONZALEZ or LIZZARAGA. Valdez Armenta stated the bedroom was also utilized for storage by GONZALEZ. Upon searching the bedroom, investigators observed indicia bearing the names of Valdez Armenta, LIZZARAGA and GONZALEZ, to include suspected false identification documentation, in various location within the room.

31. RAC Creiglow exited the apartment to speak with GONZALEZ who had remained in the rear of a law enforcement vehicle, pending his transportation to the U.S. Marshals Service. RAC

Creiglow explained to GONZALEZ that a handgun safe and ammunition were located in one of the bedrooms he had access to.  RAC Creiglow asked GONZALEZ if he had the digital code to enter the handgun safe.  GONZALEZ stated he was not going to give investigators the combination code for the safe.  RAC Creiglow asked GONZALEZ to cooperate so that investigators would not have to apply for a search warrant.  GONZALEZ told RAC Creiglow investigators wouldn't find a firearm in the safe but would find "something else."

32. At approximately 8:53 a.m., SA MacLean and Task Force Officer Miller, travelled to the Safeway grocery store located at 11290 Donner Pass Road, Truckee, CA.  Upon arrival, investigators conducted a consensual interview with Jesus LIZZARAGA.  LIZZARAGA was shown a photograph of the footage in which GONZALEZ brandished the firearm and which shows LIZZARAGA as the individual restraining GONZALEZ.  LIZZARAGA agreed to accompany the investigators back to the apartment and stated that investigators would find cocaine and the firearm contained within his "nephew's" safe.  LIZZARAGA also told investigators that GONZALEZ was his nephew.  LIZZARAGA provided a statement in writing allowing investigators to search his belonging for a key to the safe.  His statement also identified GONZALEZ as the owner of the safe.  LIZZARAGA said the only individual with access to the safe was GONZALEZ because he had a key.  RAC Creiglow asked LIZARRAGA where GONZALEZ kept the key and he stated he kept it on his person.  RAC Creiglow later showed LIZARRAGA the keys that were found on GONZALEZ and he stated one of the keys was to the safe.  LIZARRAGA told investigators that they could open the safe and find a firearm and cocaine.  SA Maclean seized the bowl, safe and ammunition temporarily while he applied for a search warrant.

33. The evidence was transported to HSI offices in Reno, NV for processing. At 11:57 a.m., the residue on the bowl and spoon tested positive for cocaine. At the same time, Washoe County Sheriff's Office K-9 Officer John Locke and his narcotics K-9, "Otto," executed a K-9 inspection of the safe. Deputy Locke stated his K-9 alerted to the presence of narcotics inside the safe. In addition, HSI TFO field tested the residue inside bowl and positively identified it as cocaine.

## CONCLUSION

34. I submit that this affidavit supports probable cause for a search warrant authorizing the seizure of the property described in Attachment A, to seek the items described in Attachment B.

Respectfully submitted,

/s/ Ryan MacLean
Ryan MacLean
Special Agent, HSI

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this  25  day of April 2024. This application and warrant are to be filed under seal.

HONORABLE JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

*/s/ Elliot C. Wong*
Approved as to form by AUSA ELLIOT C. WONG

## ATTACHMENT A-1

The property to be searched is a black safe or lock box bearing manufacturer's name "BULLDOG VAULTS," with a four-button coded entry and circular key access option. The TARGET CONTAINER was seized from a bedroom located adjacent to the common area of Apartment B107, 10497 Jibboom Street, Truckee, CA on April 24, 2024. This property is currently located at the Homeland Security Investigations office in Reno, NV.



This warrant authorizes the search of this property for the purpose of seizing the items described in Attachment B.

**ATTACHMENT B**

All items constituting the evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and/or ammunition) and 922(g)(5) (alien in possession of a firearm and/or ammunition) including, but not limited to, the following:

1. All firearms;

2. All ammunition;

3. All other items relating to the possession, maintenance and use of firearms, including ammunition magazines, speed loaders, ballistic vests, spare firearms parts, holsters, cleaning kits, and all other documentation that relates to the possession, sale or transfer of firearms, including but not limited to photographs, receipts for the purchase or repair of firearms, firearm containers, carrying cases, and firearm boxes;

4. Any boxes, bags, briefcases, suitcases or containers used to carry or conceal the items described in paragraphs 1, 2, and 3 of Attachment B;

5. Documents, items, and indicia tending to establish the identity of persons in control of the premises/vehicles and/or things described in the warrants, including utility bills, rent receipts, canceled checks, bank and other financial statements and records, deposit receipts, passports, driver's licenses, social security cards, mail, automobile titles, and other identification documents, land and lease titles, escrow papers, photographs, video and audio records, and keys; and

6. Documents, photographs, video recordings, audio recordings, communications, items and other indicia evidencing the possession, theft, purchase, or sale of firearms.

The terms "records", "documents", "correspondence", "communications", and "materials" include all of the items listed in this attachment in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and/or data security devices.

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) <br> Black safe or lock box bearing manufacturer's name ) <br> "BULLDOG VAULTS," with a four-button coded ) <br> entry and circular key access option, currently located ) <br> at the Homeland Security Investigations office in ) <br> Reno, NV ) | Case No.  2:24-sw-0420 JDP |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Nevada_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before  May 9, 2024  *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  April 25, 2024 at 4:24 p.m.     *[signed] Jeremy Peterson*
                                                        *Judge's signature*

City and state:    Sacramento, California            Jeremy D. Peterson, U.S. Magistrate Judge
                                                       *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |
| **Certification** | | |

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____   _____
           Signature of Judge                                         Date

## ATTACHMENT A-1

The property to be searched is a black safe or lock box bearing manufacturer's name "BULLDOG VAULTS," with a four-button coded entry and circular key access option. The TARGET CONTAINER was seized from a bedroom located adjacent to the common area of Apartment B107, 10497 Jibboom Street, Truckee, CA on April 24, 2024. This property is currently located at the Homeland Security Investigations office in Reno, NV.



This warrant authorizes the search of this property for the purpose of seizing the items described in Attachment B.

**ATTACHMENT B**

All items constituting the evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and/or ammunition) and 922(g)(5) (alien in possession of a firearm and/or ammunition) including, but not limited to, the following:

1. All firearms;

2. All ammunition;

3. All other items relating to the possession, maintenance and use of firearms, including ammunition magazines, speed loaders, ballistic vests, spare firearms parts, holsters, cleaning kits, and all other documentation that relates to the possession, sale or transfer of firearms, including but not limited to photographs, receipts for the purchase or repair of firearms, firearm containers, carrying cases, and firearm boxes;

4. Any boxes, bags, briefcases, suitcases or containers used to carry or conceal the items described in paragraphs 1, 2, and 3 of Attachment B;

5. Documents, items, and indicia tending to establish the identity of persons in control of the premises/vehicles and/or things described in the warrants, including utility bills, rent receipts, canceled checks, bank and other financial statements and records, deposit receipts, passports, driver's licenses, social security cards, mail, automobile titles, and other identification documents, land and lease titles, escrow papers, photographs, video and audio records, and keys; and

6. Documents, photographs, video recordings, audio recordings, communications, items and other indicia evidencing the possession, theft, purchase, or sale of firearms.

The terms "records", "documents", "correspondence", "communications", and "materials" include all of the items listed in this attachment in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and/or data security devices.